# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| EDGAR SEARCY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-0860 (JR) |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the parties' cross-motions for summary

judgment.  For the reasons discussed below, summary judgment will be granted in favor of the

United States.[1]

---

[1]    Plaintiff concedes the dismissal of the Attorney General of the United States, the Federal Bureau of Prisons and its Director as party defendants.  *See* Pl.'s Mot. for Sanctions Based on Perjured Testimony [Dkt. #34] at 5.  He objects to the dismissal of the United States and the Secretary of the Treasury, however.  *Id.*

A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted).  Accordingly, plaintiff's claims against the Secretary of the Treasury are treated as if they were brought against the United States directly, and the Secretary of the Treasury will be dismissed as a party defendant.  The United States, then, is the sole remaining defendant.

Because no individual defendants remain, plaintiff's claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against the BOP's Director and the Secretary of the Treasury must be dismissed.  In addition, because the United States has not waived its sovereign immunity for constitutional tort claims, plaintiff's First

(continued...)

I.  BACKGROUND

Although plaintiff finds fault with a number of policies of the Federal Bureau of

Prisons ("BOP"), only his challenge to the policy prohibiting an inmate from sharing his

telephone access code with another inmate need be addressed here.  As discussed below, this is

the only claim for which plaintiff has exhausted his available administrative remedies.

1.  The Inmate Telephone System

"The Bureau of Prisons extends telephone privileges to inmates as part of its

overall correctional management."  28 C.F.R. § 540.100(a).  "Telephone privileges are a

supplemental means of maintaining community and family ties that will contribute to an inmate's

personal development."  *Id.*  Inmates must use the BOP's Inmate Telephone System ("ITS") to

make all personal telephone calls, and they "must not circumvent [the ITS] via call forwarding,

including automatic electronic forwarding or any similar telephone function."  Program

Statement 5264.08, Inmate Telephone Regulations (corrected copy 02/11/2008) ("P.S. 5264.08")

at 5.  "An inmate telephone call shall ordinarily be made to a number identified on the inmate's

official telephone list," and the list "ordinarily may contain up to 30 numbers."  28 C.F.R. §

540.101(a).  The inmate certifies to the best of his knowledge that the persons on his list are

agreeable to receiving his calls.  28 C.F.R. § 540.101(a)(1).

In order to place telephone calls, an inmate uses an access code number ("PAC").

---

[1](...continued)
Amendment claims against the United States, its agencies, and employees who are sued in their
official capacities are barred.  *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477, 483-86
(1994); *Searcy v. United States*, No. 09-0148, 2009 U.S. Dist. LEXIS 5372, at *1 (D.D.C. Jan. 8,
2009) (dismissing action for monetary relief from the federal government on the ground that
sovereign immunity bars such a claim).

*See* 28 C.F.R. § 540.101(c).  He may neither possess another inmate's PAC nor give his PAC to

another inmate.  *Id.*  Each inmate is responsible for the expenses of his telephone use, and "for

staying aware of his . . . account balance."  28 C.F.R. § 540.105(a).[2]  The duration of a telephone

call is subject to the availability of inmate funds, and, generally, an inmate having sufficient

funds is allowed at least three minutes per call.  28 C.F.R. § 540.101(d).  With the exception of

inmates' conversations with their attorneys, inmate telephone calls are monitored.  28 C.F.R. §

540.102.  "The inmate is responsible for any misuse of the telephone," and a "violation of the

institution's telephone regulations may result in institutional disciplinary action."  28 C.F.R. §

540.104.  The warden of any BOP facility may impose telephone restrictions "to protect the

safety, security, and good order of the institution, as well as to protect the public."  P.S. 5264.08

at 14.

## 2.  Allegations of Plaintiff's Complaint

Plaintiff alleges that, "[o]n or about March 1, 2007, a free citizen on the outside

deposited funds in [plaintiff's trust fund account] with the intent to pay for phone minutes . . .

[and] expected the right to associate by placing the money in the phone system."  Compl. at 5.

According to plaintiff, "[PAC] numbers of purchased minutes belong to the purchaser, and when

[an inmate] purchases minutes for the depositor [of funds to his trust fund account], the [inmate]

has the right to express 1st Amendment rights by providing the [PAC] number to the third party."

---

[2]      There exists a trust fund for the benefit of inmates in BOP custody which, among
other things, provides for the operation and maintenance of the ITS.  *See* Program Statement
4500.06, Trust Fund/Deposit Fund Manual (2/19/2009), ch. 2, p. 1; *see id.*, ch. 6.  "Inmates are
responsible for transferring funds from their Commissary account[s] to their TRUFONE
account[s]," *id*, ch. 6, p.2, and are instructed on "using the interactive voice response to access
their balances," *id.*, ch. 6, p. 3.

*Id.* at 9.  The purchaser, in turn, "[u]pon receipt of the [PAC] number, . . . has the right to access the minutes on the phone to communicate with whomever they [sic] choose." *Id.*  As a result, plaintiff alleges that "[BOP] staff improperly penalize[d] [him] for his constitutionally protected action of sharing the [PAC] number through expression, with the purchaser, and the third [party's] actions of using their [sic] purchased minutes with whomever they [sic] choose." *Id.* Plaintiff deems this punishment an act of retaliation for the "[valid] exercise of his rights." *Id.* Among other relief, plaintiff demands that the defendants be "restrained from penalizing any Trust fund member who shares the [PAC] of any phone account that contains funds placed on it by third parties on the outside, and those who the third parties share the [PAC] with[,]" and from "enforc[ing] any penalty that was placed on Trust fund members after they had exercised their rights to expression by sharing the [PAC.]" *Id*. at 7.

As I understand plaintiff's factual allegations, a third person deposited funds into plaintiff's inmate trust account in order that plaintiff could purchase telephone minutes.  Plaintiff disclosed his PAC to that third person who, in turn, disclosed plaintiff's PAC to another inmate. That inmate made telephone calls to the third person using plaintiff's PAC in violation of BOP policy, subjecting plaintiff to disciplinary action.  In plaintiff's view, the BOP's policy violates his First Amendment rights to free speech and free association with persons outside the prison via the ITS.  He argues that any person who gives an inmate money so that the inmate may make telephone calls on the ITS is entitled to receive the inmate's PAC, and is entitled to share the PAC with whomever she chooses, notwithstanding any BOP policy, regulation or security concern regarding inmates' telephone use.

## II.  DISCUSSION

### A.  *Exhaustion of Administrative Remedies*

1.  <u>Exhaustion of Administrative Remedies Under the Prison Litigation Reform Act</u>

In relevant part, the Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  This exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007); *see Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008).  Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001).  "Even if an inmate believes that seeking administrative relief from the prison would be futile and even if the grievance system cannot offer the particular form of relief sought, the prisoner nevertheless must exhaust the available administrative process." *Kaemmerling v. Lappin*, 553 F.3d at 675 (citing *Booth v. Churner*, 532 U.S. at 739, 741 & n.6).  However, "if 'the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint,' then a prisoner is left with nothing to exhaust and the PLRA does not prevent the prisoner from bringing his or her claim directly to the district court."  *Id.* (citing *Booth v. Churner*, 532 U.S. at 736).  Typically, then, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's

administrative remedies.  *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

Exhaustion is an affirmative defense, not a jurisdictional bar, and the defense

properly is raised in a motion for summary judgment.  *See Plummer v. District of Columbia*, 596

F. Supp. 2d 70, 73 (D.D.C. 2009).  Defendant argues that "[p]laintiff has failed to exhaust his

administrative remedies for all but one of his claims," and, therefore, that "[a]ll of his

unexhausted claims should be dismissed."  Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss

or, in the Alternative, for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J ("Defs.' Mem.") at 7.

### 2.  The BOP's Inmate Grievance Procedure

The Administrative Remedy Program is the means by which an inmate "seek[s]

formal review of an issue relating to any aspect of his[] own confinement."  28 C.F.R. §

542.10(a).  Generally, "an inmate shall first present an issue of concern informally to staff, and

staff shall attempt to informally resolve the issue before an inmate submits a Request for

Administrative Remedy."  28 C.F.R. § 542.13(a).  If an informal resolution is not achieved, the

inmate may submit a formal written Administrative Remedy Request within 20 calendar days

following the date on which the basis for the request occurred.  28 C.F.R. § 542.14(a).  The

appeal of a Disciplinary Hearing Officer decision "shall be submitted initially to the Regional

Director[.]"  28 C.F.R. § 542.14(d)(2).  "An inmate who is not satisfied with the Regional

Director's response may submit an Appeal . . . to the General Counsel within 30 calendar days of

the date the Regional Director signed the response."  *Id.*  An appeal to the Office of General

Counsel is the final step in the administrative remedy process, and "[n]o request for [an]

administrative remedy is considered exhausted until the Central Office has issued its formal

response to the inmate."   Defs.' Mem., Declaration of Bruce Plumley ("Plumley Decl.") ¶ 2.

BOP maintains a "computerized database known as SENTRY containing the log of all administrative remedy requests and appeals submitted by BOP inmates." Plumley Decl. ¶ 3. Each submission is assigned "a permanent and unique number in this log which is commonly referred to as the index." *Id.* A search of the index of administrative appeals submitted by plaintiff yielded "74 Requests and Appeals since his admission to a Federal Correctional Institution in July 2003." *Id.* ¶ 5.

The SENTRY database includes "the abstract descriptions affiliated with each index entry," and a BOP staff member determined that "[o]nly 12 of [plaintiff's] submissions appear to relate to the claims in his complaint." Plumley Decl. ¶ 6. "[O]nly five Appeals were submitted at the Central Office level[,]" *id.* ¶ 5, and only one of these exhausted appeals, No. 452816, relates to the claims set forth in his Complaint, *id.* ¶ 6.[3]

### 3. Grievance No. 452816

On April 11, 2007, plaintiff was charged with two disciplinary offenses, both regarding plaintiff's abuse of the ITS. *See generally* Plumley Decl., Ex. 2 (Discipline Hearing

---

[3]     The BOP's supporting declaration states that:

On May 10, 2007, Plaintiff appealed (452816-R1) the April 17, 2007, decision rendered by the Discipline Hearing Officer (DHO), in which he was found to have given his [PAC] to a member of the community who in turn provided it to another inmate to use. Considered an item of value, such an act would neither be permitted nor authorized by staff. As such, the act was prohibited. The Appeal was received by the Regional Office [footnote omitted], but rejected for procedural defects. [Plaintiff] corrected the defects and resubmitted (452816-R2) his Appeal. The Regional Director denied the appeal on July 3, 2007. He appealed the decision to [the Central Office]. After reviewing the entirety of the matter, [the Central Office] upheld, on October 5, 2007, the previous decision. This Appeal cycle was considered exhausted.

Plumley Decl. ¶ A.1.

7

Officer Report ("DHO Report")).  The Discipline Hearing Officer ("DHO") dropped the more

serious charge, and found that plaintiff "committed the prohibited act of Code 297," *id.* at 3,

which is defined as:

> Use of the telephone for abuses other than criminal activity (e.g., circumventing
> telephone monitoring procedures, possession and/or use of another inmate's [PAC]
> number; third-party calling; third-party billing; using credit card numbers to place
> telephone calls; conference calling; talking in code)

Program Statement 5270.07, Inmate Discipline and Special Housing Units (01/09/2003), ch. 4,

pp. 9, 11.  In relevant part, the DHO report read:

> On April 11, 2007, while reviewing recorded calls identified by the ITS system as
> being placed by Inmate Evans, on April 10, 2007, at 1730 hours, he stated that his
> money was low on this one.  On April 10, 2007, at 1200 hours, he fought with his
> female caller named [K.M.], about where she had slept the night before.  On April
> 10, 2007, at 1159 hours, the ITS system identified inmate Searcy, Edgar's PAC
> number in use and there was an argument about where she slept the night before[;]
> he asked if she wa[s] cheating on him.  On April 7, 2007, at 1821 hours, Searcy's
> PAC number is in use . . ..  Inmate Evans has [K.M.] listed as his fiancee on his
> visiting list.  Inmate Searcy has no visitors on his visiting list.  Based on the
> investigation completed on April 12, 2007, Inmate Evans has made 51 calls using the
> PAC number of Inmate Searcy to 407-272-****.

The DHO considered the telephone lists of Inmates Evans and Searcy[;] they both share phone
number 407-272-****.

> [Plaintiff] appeared before the DHO and stated that [Evans] is using [plaintiff's] PAC
> number to place calls. [Plaintiff] gave [K.M. his] PAC number to give to [Evans] in
> case of emergency, and [Evans] needed to contact [K.M.]

Plumley Decl., Ex. 2 (DHO Report) at 3.[4]  The DHO suspended disciplinary sanctions pending

---

[4]     Among the evidence before the DHO was plaintiff's admission:

> He is using my PAC number to place calls.  I gave his fiance[e] my PAC number to
> give to him in case of emergency, and he needed to contact her.

Plumley Decl., Ex. 2 (DHO Report) at 2.

180 days' clear conduct.  *Id.* at 4.

Plaintiff sought to "[r]e move the Disciplinary report and finding," Plumley Decl.,
Ex. 2 (Regional Administrative Remedy Appeal) at 2, by filing an administrative appeal.  *Id.* at
1-2.  He maintained that both he and the third party whose funds were deposited into plaintiff's
trust account for the purpose of purchasing phone minutes have the right to share the PAC
number with whomever they chose.  *Id.* at 2.  Plaintiff strenuously objected to what he
characterized as retaliation for the exercise of his First Amendment right to free speech and
association.  *See id.*

The Regional Director found that "the DHO substantially complied with [BOP]
regulations, based the decision on the greater weight of the evidence, and imposed appropriate
sanctions."  Def.'s Mem., Ex. 2 (Regional Administrative Remedy Appeal No. 452816-R2, Part
B – Response).  On appeal to the Central Office, the Administrator of National Inmate Appeals
concluded that "the required disciplinary procedures were substantially followed."  *Id.*, Ex. 2
(Administrative Remedy Appeal No. 452816-A1, Part B – Response).  "Review of the record
reveal[ed] that [plaintiff's] PAC was used by another inmate to utilize [plaintiff's] telephone
account to contact persons outside the prison[,]" and the Administrator found that plaintiff
"clearly intended for [his] PAC to be provided to the other inmate in order that he may utilize
[plaintiff's] telephone account," an act which "constitute[d] the commission of offense code
297."  *Id.*  "This Appeal cycle was considered exhausted."  Plumley Decl. ¶ A.1.

The Court has reviewed plaintiff's submissions, and on this issue finds only
plaintiff's unsupported "object[ion] to the defendants['] frivolous claims in which they allege
that the plaintiff failed to exhaust administrative remedies of the Department of the Treasury."

Pl.'s Mot. for Sanctions Based on Perjured Testimony [Dkt. #34] at 7.  Plaintiff maintains that

his claims "are not related to prison conditions[,]" *id.*, but rather pertain only to "monies held in

the Treasury[,]" *id.*  For this reason, he argues that "the exhaustion doctrine in § 1983 and §

1997e is not applicable to the Treasury[.]"  *Id.* at 8; *see also* Mot. for the Court to Take Judicial

Notice of a Violation of the Clean Hands Doctrine [Dkt. #42] at 3.

       Plaintiff appears to be under the mistaken impression that the Department of the

Treasury is responsible for all matters related to the trust fund which finances the operation and

maintenance of the ITS.  Although the Department of the Treasury has established control

accounts for trust fund operations, the BOP is responsible for managing the trust fund.  *See*

Program Statement 4500.06, <u>Trust Fund/Deposit Fund Manual</u> (2/19/2009), ch. 2, p. 2

(designating the Chief of the BOP's Trust Fund Branch as the individual "responsible for

addressing questions of policy [and] distributing funds"); *see id.*, ch. 6, p. 1 (designating the

Trust Fund TRUFONE Coordinator and the Trust Fund Supervisor as the individuals primarily

responsible for management oversight of the ITS).  The BOP regulates an inmate's telephone use

and may punish him for misuse of the ITS.  Such matters clearly fall within the scope of prison

circumstances or occurrences, the redress of which requires exhaustion of administrative

remedies through the BOP's Administrative Remedy Program.

       Defendants' motion for summary judgment will be granted in part.  All claims

with the exception of plaintiff's challenge to the DHO decision in Grievance No. 452816 will be

dismissed.  *See Knapp v. Martin*, 22 Fed. Appx. 589 (6th Cir. 2001) (affirming dismissal of

claims raised by a Michigan prisoner, except for his challenge to a disciplinary hearing, for

failure to exhaust administrative remedies); *Hinton v. Corr. Corp. of Am.*, 623 F. Supp. 2d 61,

64-65 (D.D.C. 2009) (granting summary judgment for defendant where "the plaintiff has not

provided evidence that establishes that he followed the prescribed grievance procedures in

sequence and met the requirements at each step, thereby exhausting all available administrative

remedies" with respect to his claim that overcrowding and unsanitary conditions at the prison

caused him to become infected with methicillin-resistant Staphylococcus aureus ("MRSA")

bacteria); *Plummer v. District of Columbia*, 596 F. Supp. 2d at 74 (granting summary judgment

for defendant where, "[o]n this record, there is no evidence that the plaintiff exhausted his

administrative remedies before filing this claim in court, and there is a sworn statement and

documentary evidence to support the conclusion that Plummer did not exhaust the administrative

remedies.").

### B. Inmate Telephone Use and the First Amendment

The First Amendment provides that "Congress shall make no law . . . abridging

the freedom of speech." U.S. Const. amend. I. Inmates retain protections afforded by the First

Amendment, *see Pell v. Procunier*, 417 U.S. 817, 822 (1974), but it is settled that "[t]he fact of

confinement as well as the legitimate goals and policies of the penal institution limit these

retained constitutional rights." *Bell v. Wolfish*, 441 U.S. 520, 545, 546 (1979). Moreover, prison

officials "should be accorded wide-ranging deference in the adoption and execution of policies

and practices that in their judgment are needed to preserve internal order and discipline and to

maintain institutional security." *Id.* at 547. If a prison policy impinges upon on an inmate's

constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

"The right at issue in the present case may be defined expansively as the First

Amendment right to communicate with family and friends." *Pope v. Hightower*, 101 F.3d 1382,

1385 (11th Cir. 1996). Telephone calls are but one way for an inmate to communicate with

individuals outside of the prison. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)

(defining "the First Amendment right at issue in this case as the right to communicate with

persons outside prison walls," with the use of a telephone as "a means of exercising this right.").

"An inmate has no right to unlimited telephone use," however. *Benzel v. Grammer*, 869 F.2d

1105, 1108 (8th Cir.) (citing *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982)), *cert. denied*, 493

U.S. 895 (1989); *see Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (stating that "a

prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate

security interests of the penal institution'") (quoting *Strandberg v. City of Helena*, 791 F.2d 744,

747 (9th Cir. 1986)); *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1988) (upholding restriction

on inmate telephone use to one call every other day); *see also Cook v. Hills*, 3 Fed. Appx. 393,

394 (6th Cir. 2001) ("[T]he district court correctly noted that [a death row inmate's] contention

that he has a right to private telephone calls is meritless").

   Plaintiff cites no authority for the proposition that either an individual inmate or a

third party outside the institution may dictate the circumstances under which the inmate uses his

PAC. Nor does plaintiff set forth a cognizable basis for absolving him of the consequences of

disciplinary action resulting from his admitted misuse of the ITS. Finally, plaintiff offers no

argument to dissuade the Court that regulations restricting inmates' telephone use are reasonable

as long as they further the government's legitimate penological interests, including the safety and

security of correctional institutions, inmates, staff, and the public. *Arney v. Simmons*, 26 F.

Supp. 2d 1288, 1293 (D. Kan. 1998) ("In many court opinions, it appears to be assumed that a

legitimate penological purpose is served by restrictions on telephone access."); *see Almahdi v. Ashcroft*, 310 Fed. Appx. 519, 522 (3d Cir. 2009) (concluding that restrictions on an inmate's telephone use were not "an unreasonable method of furthering the penological interests in maintaining security and discipline," particularly where the inmate "was under investigation for telephone abuse, and he had already committed two telephone-related infractions"); *Pope v. Hightower*, 101 F.3d at 1048 (concluding that "the use of a ten-person calling list is valid and rational" as it is reasonably and objectively connected to the government's interests in reducing criminal activity and harassment); *Martin v. Tyson*, 845 F.2d at 1458 (upholding the practice of limiting inmates' telephone use to one call every other day on lines monitored to ensure that they were placed to the designated party "[s]ince security is a vital concern in jails"); *Jackson v. Patton*, No. 07-CV-107, 2008 WL 89907 (E.D.Ky. Jan. 8, 2008) (rejecting inmate's challenge to telephone restriction prohibiting him from having telephone contact with his mother and his wife, both of whom are inmates at other federal prisons, because the restriction was reasonably related to legitimate penological interest in security within a prison); *cf. Janis v. United States*, No. 06-cv-1613, 2009 WL 564207, at *14 (S.D. Ind. Mar. 4, 2009) (concluding that Federal Tort Claims Act claim for negligent administration of the ITS is barred as a matter of law because "the telephone usage policy is discretionary with the authority of prison administrators, and the exercise of that discretion requires the balancing of policy considerations such as budget, facilities, staff resources, etc.").

The Court rejects plaintiff's constitutional challenge to the BOP's policy prohibiting an inmate from giving his PAC number to another inmate or possessing another inmate's PAC number.  *See, e.g., Joaquin v. Nash*, No. 05-3338, 2006 WL 840800, at *5-6

(D.N.J. Mar. 24, 2006) (concluding that Code 297 was not unconstitutionally vague and that three-way telephone conversation with plaintiff "acting as the middleman, relaying conversation between [another inmate] and [a third party]" violated Code 297). Such restrictions are reasonably related to the BOP's legitimate penological interests in maintaining security within the institution.

### C.  Plaintiff's Challenge to the DHO Report[5]

Plaintiff asserts that the DHO Report "did not contain any evidence to prove that [he] violated [code] 297." Plumley Decl., Ex. 2 (Regional Administrative Remedy Appeal) at 2. He is incorrect.

Generally, an inmate in a disciplinary hearing is entitled to minimum due process protections: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). A DHO's decision is upheld as long as there is "some evidence," however meager, to support it. *Superintendent, Massachusetts Corr. Institution. v. Hill*, 472 U.S. 445, 455-56 (1985) ("Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of

---

[5]     Plaintiff challenged the DHO Report on several grounds, only one of which is relevant to the Code 297 offense charged: the sufficiency of the evidence supporting the DHO's decision. *See* Plumley Decl., Ex. 2 (Regional Administrative Remedy Appeal) at 2. The Court finds that plaintiff's other contentions (such as the limit of 300 minutes per month) either exceed the scope of the DHO Report or are claims (such as the First Amendment rights of family members and friends to communicate with inmates by telephone) that plaintiff lacks standing to bring.

witnesses or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

The record of this case indeed shows that plaintiff acknowledged his violation of Code 297, and plaintiff does not withdraw that acknowledgment.  Instead, he seeks relief from disciplinary sanctions by relying on the First Amendment and his asserted right to communicate with family and friends outside the institution.  However, the BOP's regulations clearly prohibit an inmate from giving his PAC to another inmate, and plaintiff's admission along with the other evidence on which the DHO relied satisfies the requirements of due process in this context.

### III.   CONCLUSION

Plaintiff exhausted his administrative remedies only with respect to Grievance No. 452816, and his challenge to the DHO Report on constitutional grounds is meritless. Defendant's motion to dismiss or for summary judgment will be granted by a separate order.


JAMES ROBERTSON
United States District Judge